IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CERTAINTEED CORPORATION, | : | |
| Plaintiffs | : | Civil Case Number |
| | : | |
| v. | : | |
| | : | |
| NICHIHA USA, INC. and | : | NO. 09-CV-3932-LS |
| BRUNO C. DEMEY | : | |
| Defendants | : | |

**MEMORANDUM OPINION**

**Stengel, J.**                                                              **October 29, 2009**

Defendant Nichiha USA, Inc. ("Nichiha") and Defendant Bruce Demey filed

motions to dismiss, transfer, or stay on September 2, 2009 and September 5, 2009,

respectively.  For the reasons set forth below I will deny the motions.

**I.      FACTS**

Plaintiff CertainTeed Corporation ("CertainTeed") and Nichiha are competitors in

the business of manufacturing fiber cement.  See First Amended Complaint at ¶ 40,

CertainTeed Corp. v. Nichiha USA, Inc., No. 09-3932 (E.D. Pa. filed Sept. 3, 2009)

[hereinafter First Amended Complaint].   Demey was employed by CertainTeed from

March 2003 until he resigned on August 20, 2009.  Id. at ¶ 18.  Demey has accepted an

offer of employment from Nichiha.  Id. at ¶ 38.

CertainTeed's headquarters is located in Valley Forge, Pennsylvania, and it has

manufacturing plants in Indiana, North Carolina, and Oregon.  Id. at ¶¶ 1, 10.  The

majority of CertainTeed's confidential information and trade secrets are located in Valley

Forge Pennsylvania, and its computer servers are located in Valley Forge.  Id. at ¶ 16.

Although Demey resided in South Carolina, he made repeated trips to Valley Forge,

including trips to attend product development, business strategy, technical, and

manufacturing-related meetings.  See First Amended Complaint at ¶ 19.

While employed by CertainTeed, Demey was the Director of Manufacturing and

Technology.  Demey traveled between CertainTeed's plants and its headquarters.  Id. at ¶

23.  He was the "highest ranking manufacturing and technical employee within

CertainTeed's fiber cement siding business and knew virtually every manufacturing and

technical aspect of the business."  Id. at ¶ 24.  This knowledge included information

learned at, and presented to, CertainTeed's parent Saint-Gobain Corporation.  Id.  During

his employment, Demey was familiar with, and was involved in the development of,

confidential information and trade secrets, including information relating to

manufacturing formulations and processes, product development plans, manufacturing

processes and technical operations information.  Id. at 26.

On September 16, 2004, Demey executed a Non-Compete Employee Agreement

("Non-Compete Agreement") with CertainTeed in exchange for a lump sum payment of

$25,000.  See First Amended Complaint at ¶ 29.  Among other provisions, the Non-

Compete Agreement states Demey shall "use his best efforts and diligence" both during

and after his employment "to protect the confidential, trade secret, and/or proprietary

nature of all Confidential Information."  See First Amended Complaint at Exh. A at ¶¶ 4,

2

6.  It also provides that during the one-year period following his termination he shall not, without written consent of a company officer, "engage in or contribute [his] knowledge to any work or activity that involves a product, process, apparatus, service or development . . . which is then competitive with or similar to" those he worked on while CertainTeed, or which he had gained confidential information about while at CertainTeed.  Id. at ¶ 8.  The Non-Compete Agreement provides Pennsylvania law would apply.  Id. at ¶ 13.  On June 25, 2009, Saint-Gobain Corporation wrote to Demey to further explain the terms of the Non-Compete Agreement.  See First Amended Complaint at ¶ 67.

CertainTeed alleges prior to Demey's August 20, 2009 resignation, he negotiated a position with Nichiha as Director of Engineering and Manufacturing, and claims Demey had accepted an offer of employment before he resigned.  Id. at ¶ 38.  CertainTeed alleges Demey would use the confidential information and trade secrets obtained during his CertainTeed employment to fulfill his responsibilities with Nichiha.  Id. at 52.  It also alleges negotiations between Nichiha and Demey likely included disclosure of confidential information and trade secrets.  Id. at ¶ 46.  CertainTeed maintains Demey's employment with Nichiha is contingent upon the termination of Demey's non-compete obligations with CertainTeed.  Id. at ¶ 62.

CertainTeed alleges a breach of contract claim and breach of fiduciary duty claim against Demey, a tortious interference with contractual relations claim and an unfair competition claim against Nichiha, and a violation of the Pennsylvania Uniform Trade

Secrets Act, a violation of the South Carolina Trade Secrets Act, a violation of the North Carolina Trade Secrets Protection Act, a violation of the Indiana Uniform Trade Secrets Act, a violation of the Oregon Uniform Trade Secrets Act, and a civil conspiracy claim against Demey and Nichiha.

## II.    COURT PROCEEDINGS AND FILINGS

On August 24, 2009 Demey filed a complaint and motion for a preliminary injunction in the Superior Court of Fulton County, State of Georgia against CertainTeed seeking, inter alia, declaratory relief pursuant to Georgia State law "that the non-compete and non-disclosure terms of the Non-Compete Agreement are an impermissible restraint of trade and competition, and thus are unlawful, invalid, and unenforceable under Georgia law."  Notice of Removal at Ex. 1, Verified Complaint for Declaratory Judgment and Other Injunctive Relief at ¶ 19, Demey v. CertainTeed Corp., No. 09-2338 (N.D. Ga. filed Aug. 26, 2009).  Demey also sought an injunction preventing CertainTeed from taking action to enforce the covenants against Demey, recover damages or other remedies based on the covenants, or preclude or disrupt Demey's ability to engage in employment with Nichiha.  Id. at ¶¶ 24-25.

On August 26, 2009, CertainTeed removed the state court action to the United States District Court for the Northern District of Georgia ("Georgia Action").  On September 2, 2009, United States District Court Judge Timothy C. Batten, Sr. granted

Demey's motion for a temporary restraining order.  The order enjoined CertainTeed from enforcing the non-competition covenant in Georgia, required Demey post a $15,000 bond with the Clerk, bound Demey to Georgia's trade secret laws, and granted expedited discovery.  If Demey does not move to Georgia, Judge Batten indicated he would re-consider his ruling on the TRO and preliminary injunction.[1]  On September 9, 2009, Nichiha and Demey filed a first amended complaint in the Georgia Action, which adds Nichiha as a party to the Georgia Action.[2]

CertainTeed commenced this action in the Eastern District of Pennsylvania on August 28, 2009 ("Pennsylvania Action").  On August 31, 2009, it requested a preliminary injunction and temporary restraining order.[3]

On September 2, 2009, Nichiha filed a motion to dismiss, transfer or stay the Pennsylvania Action.  On September 3, 2009, CertainTeed filed a first amended complaint in the Pennsylvania Action, removing any claim to enforce the non-compete

---

[1]  Contrary to CertainTeed's contention, Judge Batten did not deny Nichiha and Demey's motion to dismiss, transfer, or stay the Pennsylvania Action.  Rather, Judge Demey merely denied the defendants motion to order CertainTeed to voluntarily dismiss the Pennsylvania Action.  See First Amended Complaint at Exh. D at 25:13-22, Transcript of Temporary Restraining Order Proceedings before the Honorable Timothy C. Batten.

[2]  On September 14, 2009, CertainTeed filed a motion to dismiss plaintiffs' complaint and dissolve the temporary restraining order and preliminary injunction.  Judge Batten has not yet addressed this motion.

[3]  In addition, on August 31, 2009, CertainTeed filed in the Georgia Action a motion to dismiss, transfer or stay in light of the Pennsylvania Action, which Judge Batten denied.

covenant in Georgia.

## III.   FIRST-FILED RULE

The first-filed rule enjoins "the subsequent prosecution of 'similar cases . . . in different federal courts.'"  Equal Employment Opportunity Comm. v. University of Pennsylvania, 850 F.2d 969, 971 (3d Cir. 1988).   The rule provides, where federal concurrent jurisdiction exists, if the cases "involve the same parties and issues, the court of the first-filing must proceed to decide the matter."  The first-filed rule "encourages sound judicial administration and promotes comity among federal courts of equal rank." Id.  For the first-filed rule to apply, however, "the later-filed case must be 'truly duplicative'" of the first-filed case.  Grider v. Keystone Health Plan Ctr., Inc., 500 F.3d 322, 333 n.6 (3d Cir. 2007) (citing Smith v. S.E.C., 129 F.3d 356, 361 (6th Cir. 1997)). Therefore, the case "must be materially on all fours" with the first-filed case, such that "a determination in one action leaves little or nothing to be determined in the other."  Id. (quoting Smith, 129 F.3d at 361).

The Georgia Action and Pennsylvania Actions are not "materially on all fours," such that "a determination in one action leaves little or nothing to be determined in the other."  The Georgia Action is limited to the enforceability of the Non-Compete Agreement in Georgia, and a request to enjoin CertainTeed from preventing Demey's employment with Nichiha.  The Pennsylvania Action raises numerous issues, including

6

violations of trade secret laws, civil conspiracy, and unfair practices, in addition to the

enforceability of the Non-Compete Agreement in all states but Georgia.  Therefore, the

cases are not "truly duplicative," and the first-filed rule does not apply.  Moreover, the

initial relief granted in the Georgia Action is limited to Georgia.  The relief sought in the

Pennsylvania Action extends beyond Georgia's borders.

Nichiha argues all claims in the Pennsylvania Action are compulsory

counterclaims in the Georgia Action.  Federal Rule of Civil Procedure 13(a)(1) provides a

party "must state as a counterclaim any claim that – at the time of [the pleadings'] service

– the pleader has against an opposing party if the claim (A) arises out of the transaction or

occurrence that is the subject matter of the opposing party's claim; and (B) does not

require adding another party over whom the court cannot acquire jurisdiction."  "'A claim

is compulsory if it bears a logical relationship to an opposing party's claim,' such that

separate trials on each party's claim 'would involve a substantial duplication of effort.'"

Zelenkofske Axelrod Consulting, L.L.C. v. Stevenson, 1999 WL 592399 (E.D. Pa. Aug.

5, 1999) (quoting Savarese v. Agriss, 883 F.2d 1194, 1208 (3d Cir. 1989)).  Claims are

logically related if the claims contain "(1) many of the same factual issues; (2) the same

factual and legal issues; or (3) offshoots of the same basic controversy between parties."

Id. (quoting XEROX Corp. v. SCM Corp., 576 F.2d 1057, 1059 (3d Cir. 1978)).

Nichiha relies on Zelenkofske Axelrod Consulting, L.L.C. v. Stevenson, 1999 WL

592399 (E.D. Pa. Aug. 5, 1999), to support its contention the actions are truly duplicative,

and the claims raised in the Pennsylvania Action are compulsory counterclaims in the

Georgia Action.  However, as discussed above, the cases are not truly duplicative.

Although both address the enforceability of the non-compete agreement, at this stage I

cannot say all the claims in the Pennsylvania Action are compulsory counterclaims in the

Georgia Action.  The violations of the trade secret law and the misappropriation of trade

secrets are not so logically related to whether the non-compete agreement is enforceable

pursuant to Georgia public policy such that separate trials would require "substantial

duplication of efforts."  See AcademyOne, Inc. v. Collegesource, Inc., 2009 WL 792865,

at *3 (E.D. Pa. Mar. 23, 2009) (finding no logical relationship existed, where only the

complaints had been filed, because, although the cases involved the same parties and

competitive relationship, the actions are separate and distinct and are able to proceed

simultaneously without substantial duplication).

Accordingly, I find the first-filed rule does not apply.[4]


**IV.   VENUE**

Where jurisdiction is based solely on diversity of citizenship, a case "may, except

as otherwise provided by law, be brought only in (1) a judicial district where any

defendant resides, if all defendants reside in the same State, (2) a judicial district in which

---

[4] Demey and Nichiha argue a stay is a possible remedy for an action subject to the first-filed rule.  See Nichiha's Memorandum at 21 (citing RJF Holdings III, Inc. v. Refractec, Inc., 2003 WL 22794987 (E.D. Pa. Nov. 24, 2003)). Because the first-filed rule does not apply, the Pennsylvania Action will not be stayed.

8

a substantial part of the events or omissions giving rise to the claim occurred, or a

substantial part of property that is the subject of the action is situated, or (3) a judicial

district in which any defendant is subject to personal jurisdiction at the time the action is

commenced, if there is no district in which the action may otherwise be brought."  28

U.S.C.A. § 1391(a).   "The test for determining venue is not the defendant's 'contacts'

with a particular district, but rather the location of those 'events or omissions giving rise

to the claim.'"  Cottman Transmission Systems, Inc. v. Martino, 36 F.3d 291, 294 (3d Cir.

1994).  "[V]enue does not have to have greatest connection to the cause of action or be

the 'best forum' for the action, as multiple districts could be proper based on the operative

facts."  Paul Green School of Rock Music Franchising, LLC v. Rock Nation, LLC, 2009

WL 129740, at 2 (E.D. Pa. Jan. 13, 2009) (citing Cottman Transmission Sys., 36 F.3d at

294).[5]

CertainTeed claims Demey misappropriated confidential information and trade

secrets and breached the Non-Compete Agreement.  CertainTeed stores its confidential

information and trade secrets on computers located in Valley Forge, Pennsylvania.

Demey discussed CertainTeed's confidential information and trade secrets with key

management personnel at meetings held in Valley Forge.  Demey's employment with

---

[5]  It is unclear whether the plaintiff or defendants bears the burden when venue is challenged.  See Simon v. Ward, 80 F. Supp. 2d 464, 466-67 (E.D. Pa. 2000) (cataloging cases discussing burden in venue challenges); Myers v. Am. Dental Ass'n, 695 F.2d 716, 724 (3d Cir. 1982) (defendant must establish venue is improper); Liev v. Am. Pacific Int'l, Inc., 489 F. Supp. 690, 696 (E.D. Pa. 1980) (plaintiff must establish venue is proper).  Even if CertainTeed bears the burden, it has established venue is proper.

CertainTeed was partly negotiated in Pennsylvania, he performed services for CertainTeed in Pennsylvania, his responsibilities included participation in strategic discussions in Pennsylvania with chief executive officers of CertainTeed and Saint Gobain, and traveled to Valley Forge, Pennsylvania during his employment with CertainTeed.  Moreover, the non-compete agreement states Pennsylvania law applies.

CertainTeed has established a "substantial part of the events or omissions giving rise to the claim occurred" in Pennsylvania.  See Dollar Discount Stores of Am., Inc. V. Petrusha, 2001 WL 881725, at *1 (E.D. Pa. Apr. 25, 2001) (venue proper where franchise agreement executed, confidential and proprietary information was disseminated, defendant's application was reviewed and approved, and defendant received training in the district); G & K Services, Inc. v. Ambler, 2007 WL 712290, at *3 (E.D. Pa. Mar. 6, 2007) (venue proper where, although defendant lived in Maryland, she traveled during the week to plaintiff's headquarters in Exton, Pennsylvania, her business cards listed the Exton office as her mailing address, her supervisor was located in Exton, she participated in conference calls with employees located in Exton to develop strategies, and received confidential information for training courses identifying Exton as the regional office); see also Paul Green School of Rock, LLC, 2009 WL 129740, at *2 ("trade secrets have a situs in their state of origin" (quoting Harry Miller Co. v. Carr Chem, 5 F. Supp. 2d 295, 298 (E.D. Pa. 1998)).[6]

---

[6] Nichiha alleges Paul Green School of Rock Franchising is not applicable because CertainTeed does not allege a specific trade secret.  However, CertainTeed does allege the theft

Citing <u>ProModel Corp v. Story</u>, 2007 WL 4124502 (E.D. Pa. Nov. 19, 2007), Nichiha alleges the Eastern District of Pennsylvania is not a proper venue because CertainTeed's claims are based on Demey's post-employment conduct, and "economic harm without other substantial activity within the district . . . is insufficient to establish venue." <u>See</u> Defendant's Reply Brief in Support of Defendant Nichiha USA, Inc's Motion to Dismiss, Transfer, or Stay at 11, <u>CertainTeed Corp. v. Nichiha USA, Inc.</u>, No. 09-3932 (E.D. Pa. filed September 24, 2009) [hereinafter Defendant's Reply].  In <u>ProModel Corp</u>, the court noted ProModel did not allege the defendant committed any wrongful acts in Pennsylvania and that all claims were based on the defendant's "post employment conduct, alleging that he is 'selling products and services similar to those he sold for ProModel.'" <u>ProModel</u>, 2007 WL 4124502, at *2-3.

Unlike the plaintiff in <u>ProModel</u>, CertainTeed alleges wrongful conduct occurred in Pennsylvania, including obtaining CertainTeed confidential information and trade secrets.  Although Demey now seeks employment in Georgia, Demey and Nichiha would be sharing and utilizing confidential information and trade secrets which originated, and are stored, in Valley Forge, Pennsylvania.[7]  In addition, CertainTeed alleges contract

of trade secrets occurred in Pennsylvania and alleges the unfair competition may have occurred in Pennsylvania.  <u>See</u> <u>Paul Green Sch. of Rock Franchising</u>, 2009 WL 129740, at *2.  Therefore, venue does not rest solely on the situs of a trade secret.

[7]  Nichiha also allege ProModel applies because, as in ProModel, CertainTeed is attempting to forum shop.  <u>See</u> Nichiha's Reply at 11-12.  Unlike ProModel, where the only connection to Pennsylvania was economic harm suffered, here CertainTeed alleges wrongful conduct occurred in Pennsylvania and the employment agreement provides Pennsylvania law

negotiations between Nichiha and Demey occurred while Demey was in Pennsylvania.

Therefore, a "substantial part of the events or omissions giving rise to the claim[s]"

against Nichiha occurred in Pennsylvania.

Accordingly, I find venue is proper as to both Nichiha and Demey.


**C.    TRANSFER**

A district court may transfer venue "[f]or the convenience of the parties and

witnesses, in the interest of justice."  28 U.S.C.A. § 1404(a).  A trial court has discretion

to determine whether a civil action should be transferred.  See Jumara v. State Farm Ins.

Co., 55 F.3d 873, 879 (3d Cir. 1995); Perry v. Markman Capital Management, Inc., 2002

WL 31248038, at *9 (E.D. Pa. Oct. 4, 2002).  To transfer a civil action, a court must

determine whether the action could have been brought in the district to which transfer is

sought and, if so, whether venue in that district is proper and whether the district can

exercise jurisdiction over all defendants.  See Demey's Memorandum (citing Hayes, 2009

U.S. Dist. LEXIS 53074, No. 08-293 and Shutte v. Armco Steel Corp., 431 F.2d 22, 24

(3d Cir. 1970)).   Here, there is no dispute that the Northern District of Georgia is a

proper venue.  See Omnibus Response of Plaintiff CertanTeed Corporation to

Defendants' Motion to Dismiss, Transfer, or Stay, CertainTeed Corp. v. Nichiha, No. 9-

3932 (E.D. Pa. filed Sept. 8, 2009) (not arguing Georgia is not a proper venue).

--------------------------------

applies.

When considering a motion to transfer venue, Courts look to both public and private factors.  The private factors considered are: (1) plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses; and (6) the location of the books and records.  Jumara, 55 F.3d at 879.

The public factors to be considered are: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two forums resulting from Court congestion; (4) the local interest in deciding local controversies at home; and (5) the familiarity of the trial judge with the applicable state law in diversity cases.  Id. at 879-80.

Although Demey chose Georgia for the Georgia Action, CertainTeed, plaintiff in this case and defendant in the Georgia Action, chose Pennsylvania for this action.  The plaintiff's choice of forum should be a "paramount consideration."  Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970).  CertainTeed's key witnesses, including Demey's supervisors, are located in this district, and the documents relating to Demey's employment are maintained on servers located in the Valley Forge office.  In addition, for the non-party witnesses, the Eastern District of Pennsylvania is as convenient as Georgia.  A motion to transfer should not be used to shift inconvenience from one party to another.  See Perry v. Capital Management, Inc., 2002 WL 31248038, at *9 (E.D. Pa. Oct. 4, 2002)

13

(citing <u>Elbeco Inc. v. Estrella de Plat Corp.</u>, 989 F. Supp. 669, 679 (E.D. Pa. 1997))

The public factors also weigh against transfer.  CertainTeed's headquarters is located in Pennsylvania.  In addition, the Pennsylvania Action involves issues of Pennsylvania law, and the Eastern District of Pennsylvania is more familiar with applying this law than the Northern District of Georgia.

Nichiha argues the case should be transferred to Georgia because where two cases involve "precisely the same issues," the presence of related litigation in a different venue is "powerful" and may "tilt the balance in favor of transfer."  <u>See</u> Defendant's Reply at 14 (citing <u>Weber v. Basic Comfort Inc.</u>, 155 F. Supp. 2d 283, 286 (E.D. Pa. 2001)).  As discussed above, however, the Pennsylvania Action and the Georgia Action do not involve the same issues.  Moreover, the Federal Court in Georgia has limited the granted preliminary relief to Georgia.  Therefore, this factor does not require transfer.

Therefore, this action will not be transferred to the Northern District of Georgia.

An appropriate order follows.